### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF KENTUCKY
### BOWLING GREEN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BRITTNEY JOHNSON | ) | CASE NO. 16-31815(1)(7) |
| | ) | |
| Debtor(s) | ) | |
| | ) | |
| MICHAEL E. WHEATLEY | ) | A.P. CASE NO. 16-3081 |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT KEATON JOHNSON | ) | |
| | ) | |
| Defendant(s) | ) | |

### <u>MEMORANDUM-OPINION</u>

This matter came before the Court for trial on the Complaint of Plaintiff, Michael E. Wheatley, Trustee of the Estate of Brittney Johnson ("Trustee") against Defendant Robert Keaton Johnson ("Defendant") seeking a judgment against Defendant for a preferential transfer under 11 U.S.C. §§ 547, 548, 550, 551 and KRS § 378.010, *et seq.* for actual and constructive fraud. Based upon the evidence submitted at trial and the testimony of the witnesses, the Court will enter Judgment in favor of the Trustee and against the Defendant. A Judgment incorporating the findings herein accompanies this Memorandum-Opinion.

## FACTS

Debtor Brittany Johnson ("Debtor"), filed her Voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code on June 10, 2016. Debtor received her discharge on October 5, 2016.

Prior to this case, Debtor had filed three other bankruptcy cases. The first was a Chapter 7 case, Case No. 05-60592, filed on October 14, 2005. Debtor received her discharge on March 15, 2006.

Debtor's second case was a Chapter 13 case, Case No. 13-34753, filed on December 5, 2013. The case was dismissed on September 29, 2014 for failure to make Plan payments.

Debtor's third case was a Chapter 13 case, Case No. 15-30031, filed on January 7, 2015. This case was dismissed on February 22, 2016 for failure to make Plan payments.

Creditor Navient Solutions, Inc. on behalf of the Department of Education Loan Services filed Proofs of Claim for $42,621 in Case No. 15-30031, $35,486 in Case No. 13-34753 and $50,939 in Case No. 16-31815.

Debtor had a different attorney representing her in each of her four bankruptcy cases.

On November 2, 2016, the Trustee initiated this adversary proceeding against Defendant Robert Keaton Johnson, the Debtor's son.

The Trustee testified at trial that he attended the Debtor's First Meeting of Creditors held pursuant to 11 U.S.C. § 341 ("Section 341 Meeting") on July 19, 2016. The Trustee played the recording of the Section 341 Meeting at the trial which consisted of the testimony of the Debtor.

Debtor is employed at the Fern Valley Hotel. She testified that for the last seven years she has lived with her family. Her Petition listed her residence as 7003 Ademo Way, Louisville, KY

Case 16-03081-jal    Doc 45    Filed 12/21/17    Entered 12/21/17 15:16:55    Page 3 of 12

40291-2875. Her bank records showed that on March 16, 2016, Debtor deposited a federal tax refund check of $9,460.02 into her Fort Knox Credit Union account. The bank records also showed a deposit of another federal tax refund check of $5,433.03 into the account on the same date. Debtor testified that the $9,460.02 deposit was her federal tax refund check and the $5,433.03 check was Defendant's federal tax refund check. Since her son did not have a bank account, she deposited the check into her account. The bank statement also showed a withdrawal from the Debtor's checking account of $14,440 on the same date that the checks were deposited.

Debtor testified at the Section 341 Meeting that her son resides at 1617 Pumpkin Road in Shepherdsville, Kentucky. Debtor testified that her son did not live with her and he had his own residence.

Debtor stated that after withdrawing the $14,440 from the bank account, she gave her son his tax refund and she used the remaining $9,006.97 to pay her son's bills. She stated she paid his rent, medical bills, utilities and his water bill. She stated she sometimes paid the bills with checks and other times with cash. No checks or other documentary evidence was produced to support this testimony.

Debtor indicated at her Section 341 Meeting in answer to Question 8 on the Statement of Affairs in her Petition, that she had not transferred any funds for the benefit of an "insider."

After making the $14,440 withdrawal, Debtor's bank account balance was $3.48. There was no indication in the testimony of the Debtor at the Section 341 Meeting that she ever received anything of value from her son in exchange for the $9,006.97 that she used to pay her son's bills.

In March 2016, Defendant was also employed by the Fern Valley Hotel and he and his wife were expecting their sixth child. Defendant's wife had been admitted to the hospital for

complications with her pregnancy. She remained in the hospital for two and one-half months. During this time, Defendant's mother and grandmother helped take care of his children. Defendant stated at trial that his mother lived with him before his wife was hospitalized.

Defendant testified that while his mother stayed with him, she paid some of his bills. The Debtor claimed the Defendant's children as dependents on her taxes. There was never any written agreement between the Defendant and the Debtor that required her to pay his bills while she lived with him. Debtor, however, did not testify about living with her son at her Section 341 Meeting.

The address Debtor listed on her Petition is her mother's address. The Defendant testified that his mother lived at his grandmother's house and occasionally would move out of his grandmother's house and move into his home.

Debtor testified that the Defendant does not have his own bank account and that she helped him with his medical expenses. She stated she has always helped him with his bills. She acknowledged that she withdrew the $14,440 from her bank account, gave him his federal tax refund of $5,433 and then used the rest to pay his bills. She stated she used the money to pay her son's utility bill, water and rent. At no point did Debtor offer any documentation showing payment of these bills. Defendant also offered no evidence in support of how the money was used.

The Debtor testified at trial that in March 2016 she lived with both her mother and at times with her son. In response to several questions from Defendant's attorney, Debtor gave long rambling answers sometimes attacking the Trustee and his counsel about their actions in filing the lawsuit against the Defendant. The Debtor was admonished by the Court and instructed to respond to the questions posed to her by Defendant's counsel. Debtor ignored the warning from the Court and the Court instructed Court security personnel to remove the Debtor from the courtroom when

she became disruptive.  The Debtor is well known to Court personnel from prior complaints about her disorderly conduct and behavior in the Bankruptcy Court Clerk's Office.  Defendant's counsel objected to the removal of the Debtor from the courtroom before the conclusion of her testimony. The Court overruled Defendant's objection and allowed Defendant's counsel an opportunity to file an affidavit of the Debtor in support of the Defendant's case to support her trial testimony post-trial. No such affidavit was filed.

## LEGAL ANALYSIS

The Trustee's Complaint seeks judgment against Defendant for a preferential transfer under 11 U.S.C. §§ 547 and 548 and KRS 378.060, *et seq.* based upon Debtor's use of  $9,006.97 of her federal tax refund to either pay her son, Defendant Robert Johnson, or to pay her son's bills.  Debtor transferred $9,006.97 from her bank account on March 16, 2016, approximately one month after her prior Chapter 13 case was dismissed on February 22, 2016 due to her failure to make Plan payments. The transfer of funds by Debtor to Defendant was less than ninety days before the filing of her current Chapter 13 case which was commenced on June 10, 2016.

A.   Claim Under 11 U.S.C. § 547(b).

In order to avoid a transfer under 11 U.S.C. § 547(b), the Trustee had to prove that an interest of the debtor in property was transferred (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made – (A) on or within ninety days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and (5) that enabled such creditor to receive more than

such creditor would receive if  – (A) the case were a case under Chapter 7; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.  11 U.S.C. § 547(b).

The Debtor is presumed to have been insolvent during the ninety days immediately preceding the date of the Petition.  *See*, 11 U.S.C. § 547(f).  Defendant presented no evidence to rebut this presumption.  The evidence at trial also established the transfer of the Debtor's tax refund was made within ninety days prior to the date the Petition was filed.  The transfer of $9,006.97 to or on behalf of the Defendant resulted in him receiving significantly more than he would have received had the transfer not been made and than he would have received if the Debtor's case had been filed under Chapter 7.  The evidence established that the transfer meets the elements of a preference under 11 U.S.C. § 547(b); *In re Smith Min. & Material, LLC*, 405 B.R. 589 (Bankr. W.D. Ky. 2009).  Therefore, Judgment in favor of the Trustee is appropriate on Count I of the Complaint.

## B.  Claim Under 11 U.S.C. § 548(A)(1)(A) Actual Fraud.

In order for the Trustee to succeed on a claim under 11 U.S.C. § 548(A)(1)(A), he had to prove: (1) a transfer of an interest of the Debtor's property or the incurring of an obligation; (2) made on or within two years of the petition date; and (3) with actual fraudulent intent.    *In re Quality Communications, Inc.*, 347 B.R. 227 (Bankr. W.D. Ky. 2006).  The Trustee must prove actual intent to defraud by a preponderance of the evidence.  *Id.*  Since actual intent to defraud is difficult to prove, it may be proven by circumstances surrounding the transfer.  *In re Triple S Restaurants, Inc.*, 422 F.3d 405, 416 (6th Cir. 2005).  This is what courts refer to as the "badges of fraud" which include such things as lack of or inadequate consideration, family or a close relationship between the parties, retention of possession, benefit or use of the property in question,

the financial condition of the party sought to be charged both before and after the transaction, the existence or cumulative effect of the pattern or series of transactions or the course of conduct after incurring of the debt and onset of financial difficulties or a pending or threat of lawsuits by creditors, as well as the general chronology of events and transactions under inquiry.  *See*, *5 Collier on Bankruptcy*, ¶548.04[1][b][i] (16th Ed. 2011).

The facts of this case establish the existence of several badges of fraud.  The Debtor transferred funds to her son, a family member and "insider" under the Bankruptcy Code.  *See*, 11 U.S.C. § 101(31)(a).  The transfer left Debtor with a balance of $3.56 in her bank account after the transfer.  The transfer was not disclosed on the Debtor's Statement of Financial Affairs as a transfer to a family member within one year of the Petition.  Debtor was insolvent at the time of the transfer, as her bankruptcy case had been dismissed one month before she transferred the refund due to her failure to make Plan payments.

The Defendant did not offer any evidence to rebut the evidence presented in support of the badges of fraud.  Although Debtor and the Defendant testified at trial that Debtor lived with her son and used the money to pay his bills, perhaps as some form of payment to the Defendant for allowing her to live with him.  However, the evidence on this point was contradictory.  Debtor's testimony at her Section 341 Meeting, which was under oath, made no mention whatsoever of this arrangement.  In fact, the Debtor gave an address, not compatible with her son's address, on her Petition.  Further, she testified at the Section 341 Meeting that she lived at the Ademo Way address, not her son's home.  Additionally, she offered no evidence as to what bills of her son's were paid with the tax refund money.  The Court finds both Debtor and Defendant's trial testimony as less than credible.  The Debtor's Section 341 testimony on this point is more credible, considering the

adversary proceeding had not yet been filed and there was no benefit or motive for Debtor to testify to a living arrangement with her son at that time. The Court gives the greater weight to Debtor's sworn Section 341 testimony which does not rebut the badges of fraud presented by the Trustee. It is more likely that the Defendant and Debtor's theory that Debtor paid her son's bills as some form of rent or compensation for living with her son was developed specifically for the purpose of defending the Trustee's claims at the trial in this case. The Trustee is entitled to Judgment in his favor on Count II of the Complaint.

### C. Claim of Constructive Fraud Under 11 U.S.C. § 548(a)(1)(B).

The Trustee also asserted a claim against Defendant based on a constructive fraudulent transfer under 11 U.S.C. §548(a)(1)(B). In order to prove this claim, Trustee had to prove that (1) the Debtor transferred an interest in property; (2) the transfer took place within two years before the bankruptcy was filed; (3) the debtor was insolvent on the date the transfer was made or became insolvent as a result of the transfer; and (4) the debtor received less than reasonably equivalent value. *In re Quality Communications, Inc.*, 347 B.R. 227 (Bankr. W.D. Ky. 2006). The Trustee already proved the first three elements as discussed in the preceding section.

The final element is that the Debtor received less than the reasonably equivalent value in exchange for the transfer. The Bankruptcy Code does not define "reasonably equivalent value." This is a factual finding by the Court and in general, the concept requires that if there is any significant disparity between the market value of what the Debtor gave and what she received, a finding of reasonably equivalent value is precluded. *Baldi v. Lynch*, 319 B.R. 570, 589-90 (Bankr. N.D. Ill. 2005).

The evidence does not support a finding that Debtor received the reasonably equivalent value of $9006 that she transferred to Defendant. There is no proof in the record as to what bills, if any, that the Debtor paid on behalf of her son. The evidence also does not support Defendant's claims that Debtor paid his bills in exchange for him allowing her to live in his home. For these reasons, the Court concludes the Trustee is also entitled to Judgment against Defendant for constructive fraud under 11 U.S.C. § 548(a)(1)(B).

D. <u>Defendant's Defenses</u>.

The Defendant defended the claims of the Trustee by asserting that the funds transferred by the Debtor constituted rental payments to the Defendant in exchange for Debtor being allowed to live with his family. As the above analysis demonstrates, the evidence submitted at trial precludes the Court from making a finding in favor of the Defendant on this defense.

The Defendant's second defense was that the Debtor had approximately $12,000 -$13,000 of unused exemptions under 11 U.S.C. § 522(d)(5) ("the wildcard exemption"), which she could have claimed to exempt her federal tax refund. This defense is referred to in case law as the "no harm, no foul" rule. The rule provides that if a pre-petition transfer of property does not adversely affect creditors because the debtor could have claimed an exemption in the property, the transfer cannot be avoided as a fraudulent or preferential transfer. Defendant relies on *Kapila v. Fornabaio*, 187 B.R. 780 (Bankr. S.D. Fla. 1995), and those cases cited in Defendant's Trial Brief at pp. 2-3.

The cases relied upon by Defendant represent the minority position on this issue. The problem with Defendant's reliance on the "no harm, no foul" rule is that the defense is not valid because the Debtor could not claim an exemption in the property transferred pre-petition if the Trustee subsequently succeeded in avoiding the transfer under 11 U.S.C. § 522(g). The Court

-9-

chooses to follow the reasoning of the majority of courts which reject the "no harm, no foul" rule, as set forth by Judge Scott in *Higgason v. CIT Group/Consumer Fin., Inc.*, No. 09-6058, 2010 Bankr. LEXIS 4227 (Bankr. E.D. Ky. Nov. 9, 2010). In *Higgason*, the Bankruptcy Court in the Eastern District of Kentucky rejected the "no harm, no foul" rule as incompatible with the Bankruptcy Code and also on the basis that the right to claim the debtor's exemption is personal to the debtor and not available to a transferee as a defense to an avoidance action. *Id.* The Court agrees with the reasoning of the *Higgason* decision, as well as the cases cited therein, and rejects the Defendant's defense on the basis of "no harm, no foul" rule.

In light of the Court's findings regarding the Trustee's claims under 11 U.S.C. §§547 and 548, the Trustee is entitled to turnover of the value of the avoided transfer under 11 U.S.C. §§ 541(a)(4) and 550 from the Defendant. Accordingly, the Court will enter Judgment against the Defendant in the amount of $9,006.97.

## CONCLUSION

For all of the above reasons, the Court will enter Judgment in favor of the Plaintiff, Michael E. Wheatley, Trustee of the Estate of Brittany Johnson and against Defendant Robert Keaton Johnson avoiding the transfer of $9,006.97 by the Debtor Brittany Johnson to Defendant Robert Keaton Johnson. A Judgment incorporating the findings herein accompanies this Memorandum-Opinion.

Joan A. Lloyd
United States Bankruptcy Judge

Dated:  December 21, 2017

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BRITTNEY JOHNSON | ) | CASE NO. 16-31815(1)(7) |
| | ) | |
| _____ Debtor(s) _____ | ) | |
| | ) | |
| | ) | |
| MICHAEL E. WHEATLEY | ) | A.P. CASE NO. 16-3081 |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| ROBERT KEATON JOHNSON | ) | |
| | ) | |
| | ) | |
| _____ Defendant(s) _____ | ) | |

**<u>JUDGMENT</u>**

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Plaintiff Michael Wheatley, Trustee, of the Estate of Brittany Johnson is entitled to Judgment on his Complaint against Defendant Robert Keaton Johnson avoiding the transfer made by Debtor Brittany Johnson to Defendant Robert Keaton Johnson in the sum of $9,006.97, such transfer constituting a preferential transfer under 11 U.S.C. §§ 547 and 548 of the United States Bankruptcy Code.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Defendant Robert Keaton Johnson shall return the sum of $9,006.97 to the Plaintiff.

This is a final and appealable Judgment and there is no just reason for delay.

Joan A. Lloyd
United States Bankruptcy Judge
Dated:  December 21, 2017